# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINA P. JOHNSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 17-1066 |
| EQUIFAX INFORMATION SERVICES, LLC, | : | |
| Defendant. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                     **JUNE 27, 2017**

Presently before the Court is the Motion to Transfer Venue to the Northern District of Georgia, Atlanta Division filed by Defendant Equifax Information Services, LLC ("Equifax"), Plaintiff Christina P. Johnson's ("Johnson") Response and Brief in Opposition, Equifax's Reply Brief, and Johnson's Response to Equifax's Reply ("Sur-Reply") filed under seal. For the reasons noted below, we grant Equifax's Motion.

## I. BACKGROUND

Johnson filed the present action in the Court of Common Pleas of Montgomery County on the basis of various violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* (Compl. ¶ 1; Pl.'s Br. Opp'n at 1.) Johnson alleges she contacted Equifax to request her consumer report. (Compl. ¶18.) Equifax complied with the request and provided Johnson with a copy of the consumer report, which "contained the names and addresses of certain businesses that had accessed [Johnson's] report within the last [twelve] months of the date of the report." (Id. ¶ 20.) The report indicated that two entities, "Verizon Telecom-Auth" and "Verizon East,"

had accessed Johnson's consumer report within the relevant time period. (Id. ¶ 23.) Johnson claims she provided a written request to Equifax for the telephone numbers of Verizon Telecom-Auth and Verizon East, but Equifax refused to disclose the telephone numbers for those entities. (Id. ¶¶ 24, 28, 30.) Johnson claims the refusal to disclose the telephone numbers is a violation of federal law under 15 U.S.C. § 1681g(a)(3). (Id. ¶ 29, 31.) Lastly, she asserts that Equifax's conduct was willful in violation of 15 U.S.C. § 1681n. (Id. ¶ 33, 38; see also Pl.'s Br. Opp'n at 10.)

On March 9, 2017, Equifax timely removed the matter to this Court. On March 17, 2017, Equifax filed an Answer to Johnson's Complaint and the instant Motion to Transfer Venue, which seeks to transfer this matter from the United States District Court for the Eastern District of Pennsylvania ("Eastern District of Pennsylvania") to the United States District Court for the Northern District of Georgia, Atlanta Division ("Northern District of Georgia"). On April 10, 2017, Johnson filed a Response and Brief in Opposition to the Motion to Transfer.[1] Equifax filed a Reply Brief on April 18, 2017, and Johnson filed a Sur-Reply under seal on May 5, 2017.[2]

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of transfers under § 1404(a) is to "'prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Pro

---

[1] Johnson's Response in Opposition and Brief in Opposition are technically two separate documents. Because her Response in Opposition merely incorporates the substantive Brief in Opposition, we will refer to the Brief in Opposition only.
[2] Johnson was permitted to file a Sur-Reply under seal pursuant to the Court's April 25, 2017 Order. Based on the numerous filings by the parties, we believe there is sufficient information to decide the instant Motion. Accordingly, Johnson's request for oral argument is denied.

2

Spice, Inc. v. Omni Trade Grp., Inc., 173 F. Supp. 2d 336, 339 (E.D. Pa. 2001) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)). District courts have discretion to adjudicate motions to transfer "according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622).

A request for transfer under § 1404(a) is analyzed under a two-part framework. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 878-79 (3d Cir. 1995). First, venue must be proper in both the original and the proposed venue. Id. at 879; see also Murphy v. Trans Union, LLC, No. 12-0499, 2012 WL 3536322, at *2 (E.D. Pa. Aug. 15, 2012); Smith v. HireRight Sols., Inc., No. 09-6007, 2010 WL 2270541, at *2 (E.D. Pa. June 7, 2010). Once the moving party establishes that the action could have been brought in the proposed venue, a court must weigh and balance a non-exhaustive list of private and public interest factors to determine whether transfer is warranted. Jumara, 55 F.3d at 879. The private interest factors include:

> [1] [The] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly to the extent that the files could not be produced in the alternative forum).

Id. The public interest factors that a court must consider include:

> [1] [T]he enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80. "The defendant bears the burden of proving that transfer is appropriate." Murphy, 2012 WL 3536322, at *3.

## III. DISCUSSION

### A. Proper Venue

We must first determine whether venue is proper in the original and the proposed fora. See Jumara, 55 F.3d at 879. Venue is proper in (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). A business entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." Id. § 1391(c)(2).

Neither of the parties dispute that venue is proper in the Eastern District of Pennsylvania.[3] The parties also do not dispute that venue would be proper in the Northern District of Georgia. Indeed, Equifax is a limited liability company with its principal place of business in Georgia.[4] (Def.'s Mot. to Transfer ¶ 1; Smith Decl. ¶ 7.) Further, as discussed in more detail below, all of the operative facts surrounding Johnson's Complaint occurred in Atlanta, Georgia. Therefore, venue is proper in the Northern District of Georgia. Accordingly,

---

[3] For this reason, we deny Johnson's request for leave to amend her Complaint to further establish venue in the Eastern District of Pennsylvania.
[4] Equifax has attached the declaration of Pamela Smith ("Smith Decl.") in support of its Motion to Transfer Venue. (Def.'s Mot. to Transfer; Ex. A) Ms. Smith is a Legal Support Associate for Equifax and has been employed by Equifax for over seventeen years. (Id. ¶ 3.)

we must now weigh and balance the various private and public interest factors to see whether transfer is appropriate.

### B. Balancing the Private and Public Interest Factors

#### 1. *Private Interest Factors*

##### a. *Plaintiff's Forum Preference*

The first private interest factor is "plaintiff's forum preference as manifested in the original choice." Jumara, 55 F.3d at 879. The plaintiff's choice of forum is typically "'entitled to great weight and is not to be disturbed unless the balance of convenience strongly favors the defendant['s] forum.'" Darden v. Trans Union, LLC, No. 11-6310, 2012 WL 1071227, at *2 (E.D. Pa. Mar. 30, 2012) (quoting Blanning v. Tisch, 378 F. Supp. 1058, 1060 (E.D. Pa. 1974)). Indeed, "a plaintiff's choice of venue is of paramount consideration and should not be disturbed lightly." Smith, 2010 WL 2270541, at *3 (internal quotation marks omitted) (citation omitted). However, "'[i]t should be noted . . . that the plaintiff's choice of forum is entitled to less weight where the plaintiff chooses a forum which is neither his home nor the situs of the occurrence upon which the suit was based.'" Darden, 2012 WL 1071227, at *2 (quoting Harris v. Nat'l R.R. Passenger Corp., 979 F. Supp. 1052, 1053 (E.D. Pa. 1997)).

We do not give much weight to Johnson's forum preference for two main reasons. First, this factor, as the Jumara court originally enumerated, provides for "plaintiff's forum preference as manifested in the *original choice*." Jumara, 55 F.3d at 879 (emphasis added). Johnson did not originally file her Complaint in the Eastern District of Pennsylvania; the Complaint was originally filed in the Court of Common Pleas of Montgomery County. (See Compl.; Pl.'s Br. Opp'n at 3.) To that end, Johnson did not actually have an original preference for this Court. The only reason this matter is in the Eastern District of Pennsylvania is because Equifax

removed it pursuant to 28 U.S.C. § 1441. Accordingly, we decline to give her new preference any substantial weight in light of this action being originally filed in Pennsylvania state court.

Second, "the situs of the occurrence upon which the suit was based" was in Georgia, not Pennsylvania. "Multiple courts considering § 1404 transfer motions in FCRA cases have noted that the situs of the material events, and thus the appropriate venue, is generally the place where the defendant credit reporting agency conducted its business." Smith, 2010 WL 2270541, at *4; see also Murphy, 2012 WL 3536322, at *4 n.6; Bogollagama v. Equifax Info. Servs., LLC, No. 09-1201, 2009 WL 4257910, at *4 (E.D. Pa. Nov. 30, 2009); Klingensmith v. Paradise Shops, Inc., No. 07-0322, 2007 WL 2071677, at *2-3 (W.D. Pa. July 17, 2007); Barela v. Experian Info. Sols., Inc., No. 04-5144, 2005 WL 770629, at *4 (N.D. Ill. Apr. 4, 2005). Equifax is a Georgia limited liability company with its principal place of business in Atlanta, Georgia. (Smith Decl. ¶ 7.) Its headquarters, Consumer Center, and consumer reporting database are also located in Atlanta, Georgia. (Id. ¶¶ 8-10.) "Creditors and other data furnishers send information" about consumers to Equifax in Atlanta, Georgia. (Id. ¶ 11.) Finally, inquiring companies receive credit reports and other information concerning consumers from the Equifax database in Atlanta, Georgia. (Id. ¶ 12.) In light of those facts, the situs of the occurrence was in Atlanta, Georgia. Accordingly, Johnson's choice of forum gets little weight against transfer.

          b.     *Defendant's Choice of Forum*

A defendant's preference of forum is "entitled to considerably less weight than [a plaintiff's], as the purpose of a venue transfer is not to shift inconvenience from one party to another." EVCO Tech. & Dev. Co. v. Precision Shooting Equip., Inc., 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005) (citing Superior Precast, Inc. v. Safeco Ins. Co. of Am., 71 F. Supp. 2d 438, 446

(E.D. Pa. 1999)). Equifax requests a transfer to the Northern District of Georgia. Accordingly, this factor weighs slightly in favor of transfer.

        c.      *Where the Claim Arose*

As noted above, numerous courts to consider motions to transfer in the context of FCRA cases have concluded that the situs of material events occurs where the credit reporting agency conducts its business. See Smith, 2010 WL 2270541, at *4 (collecting cases). Johnson argues the situs of material events occurred in Pennsylvania because Equifax: (1) collected information about her, a Pennsylvania resident; (2) provided the collected information to two companies who are presumably located in Pennsylvania; and (3) failed to provide the necessary disclosures to her Pennsylvania mailing address. (Pl.'s Br. Opp'n at 13.)

Like the other courts to have considered this issue, we believe the situs of the events occurred in Atlanta, Georgia. Johnson's arguments do not tie her allegations to Pennsylvania. Equifax has come forward with evidence that its entire consumer data gathering, processing, and transmitting takes place in Georgia. (Smith Decl. ¶¶ 8-13.) Accordingly, the situs of the occurrence weighs strongly in favor of transfer.

        d.      *The Convenience of the Parties*

The fourth private interest factor is the convenience of the parties as indicated by their physical and financial condition. See Jumara, 55 F.3d at 879. Johnson argues she is simply an individual with limited resources, whereas Equifax is a financially powerful business entity with significantly more resources. (Pl.'s Br. Opp'n at 7.) Indeed, Johnson claims that litigating this case in Georgia would be "cost prohibitive" for her. (Id.) Equifax makes no argument to the contrary. Although the fact that Equifax "has substantially more resources than [Johnson] should not be the sole reason for refusing a transfer," Santi v. Nat'l Bus. Records Mgmt., LLC, 722 F.

Supp. 2d 602, 608 (D.N.J. 2010) (citing Nat'l Mortg. Network, Inc. v. Home Equity Ctrs., Inc., 683 F. Supp. 116, 119 (E.D. Pa. 1988)), we believe the burden would weigh more heavily on Johnson to litigate this matter in Georgia. Accordingly, this factor weighs against transfer.

     e.  *The Convenience of the Witnesses*

  The fifth private interest factor is the convenience of the witnesses to the extent they may be actually unavailable for trial in one of the fora. See Jumara, 55 F.3d at 879. Equifax claims the convenience of witnesses is enhanced by having this matter transferred to the Northern District of Georgia because all of its witnesses capable of testifying regarding the policies and procedures of Johnson's credit file are located in Georgia. (Def.'s Mot. to Transfer ¶ 11; Smith Decl. ¶ 16.) Further, Equifax claims that all of its witnesses who would testify about the allegations in Johnson's Complaint and about the policies and procedures pertaining to dispute resolution work in Georgia. (Id. ¶ 11; Smith Decl. ¶ 16.) Equifax maintains that it does not have a consumer database or office in Pennsylvania. (Id. ¶ 12; Smith Decl. ¶¶ 7-10.) Lastly, Equifax asserts that there are no employees in Pennsylvania "who have either knowledge of [Johnson's] credit file or access to corporate records relevant to this litigation." (Id. ¶ 15; Smith Decl. ¶ 19.)

  Johnson counters by claiming this factor weighs against transfer because party witnesses have no impact on the convenience analysis, as parties are required to produce their employee-witnesses for trial. (Pl.'s Br. Opp'n at 9.) She also claims this factor weighs against transfer because she has identified a number of non-party witnesses she intends to call at trial who will testify to the willful nature of Equifax's conduct. (Id. at 9-10.) She asserts that those witnesses have been involved in litigation against Equifax based on substantially similar conduct to the case *sub judice*.[5] (Id. at 9.) Finally, she argues she "may" call a number of agents,

---

[5] In its Reply Brief, Equifax claims that all but one of those witnesses would be violating the terms of their settlement agreements if they were to testify in this case. (Def.'s Reply Br. ¶ 2.) Johnson argues that only the terms

representatives, or employees of Verizon Telecom-Auth and Verizon East, who she claims are central to the case because those are the entities whose information Equifax allegedly withheld from her. (Id. at 11.)

Importantly, we note that this factor is relevant "to the extent [that the witness or witnesses] *may be actually unavailable* for trial in one of the fora." Jumara, 55 F.3d at 879 (emphasis added). Johnson argues that this factor strongly weighs against transfer because her non-party witnesses would be actually unavailable for trial in Georgia, but she does not provide any specific reasons for their unavailability. (Pl.'s Br. Opp'n at 10.) We acknowledge that the non-party witnesses Johnson has identified would be outside of the subpoena power of the Northern District of Georgia if this matter is transferred.[6] However, "this factor is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena." Smart Audio Techs., LLC v. Apple, Inc., 910 F. Supp. 2d 718, 732 (D. Del. 2012). "[S]imply stating that a witness would be unavailable because he or she is outside the subpoena power of a court is, without more, insufficient." Mitel Networks Corp. v. Facebook, Inc., 943 F. Supp. 2d 463, 473 (D. Del. 2013); see also Collins v. Novartis Pharm. Corp., No. 13-2363, 2014 WL 6474188, at *3 (D.N.J. Nov. 19, 2014) (declining to give the factor weight because no evidence was provided that the necessary witnesses would be unwilling or otherwise unavailable to testify); AIP Acquisition LLC v. iBasis, Inc., No. 12-0616, 2012 WL 5199118, at *4 n.6 (D. Del. Oct. 19, 2012) (stating that there must be some reason to believe that a witness actually will not testify absent a subpoena). Further, "[w]hile significant distance between an identified

---

of the settlement agreements were agreed to remain confidential, not the underlying facts surrounding the foundations of those claims. (Pl.'s Sur-Reply at 4.) We need not decide this issue because even if all nine witnesses were permitted to testify, we believe transfer is still warranted.

[6] Federal Rule of Civil Procedure 45(c) provides, "[a] subpoena may command a person to attend a trial, hearing, or deposition . . . (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's office; or (ii) is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c).

witness and the forum may suggest, in some instances, that the witness will be unwilling to appear freely, the [C]ourt will make no such presumption here." Smart Audio, 910 F. Supp. 2d at 732.

In this case, Johnson does not even claim that her potential non-party witnesses would be outside of the subpoena power of the court should the matter be transferred; she simply states the witnesses would be actually unavailable. (Pl.'s Br. Opp'n at 10.) A bare assertion that a witness will be unavailable is insufficient for purposes of this factor. Johnson must give us some reason to believe that one or more of her potential witnesses will refuse to testify at trial absent a subpoena. Johnson has failed to make any kind of showing regarding *actual* unavailability. In fact, she even admits she can elicit the sought after evidence through affidavits. (Id. at 9.) Despite that finding, however, we recognize that her witnesses would undertake an expense if this matter is transferred to the Northern District of Georgia and she chooses to have them testify in person.[7]

We are not persuaded by Johnson's argument that we should not take into account the inconvenience of Equifax's employee-witnesses because Equifax has an obligation to produce those witnesses at trial. While it is true that Equifax must make available the employees that have knowledge of Johnson's claim, her argument fails to take into account that Equifax will nonetheless incur some kind of expense by litigating this matter in the Eastern District of Pennsylvania. Accordingly, this factor is neutral.

f. *The Location of Books and Records*

The final private interest factor is the location of books and records to the extent they could not be produced in one of the fora. See Jumara, 55 F.3d at 879. Equifax claims transfer is

---

[7] Equifax has also stated that, should the case be transferred, it will depose Johnson in Philadelphia, Pennsylvania. (Def.'s Mem. in Supp. Mot. to Transfer at 8.)

appropriate because all of its documents pertaining to Johnson's credit file are located in Georgia. (Def.'s Mem. in Supp. Mot. to Transfer at 7; see also Smith Decl. ¶ 14.) However, "'the technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis.'" Lomanno v. Black, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003) (quoting Am. High-Income Trust v. AlliedSignal, Inc., No. 00-0690, 2002 WL 373473, at *5 (D. Del. Mar. 7, 2002)). Equifax does not argue that any of the information could not be transmitted electronically or that there is some hardship in producing the evidence in the Eastern District of Pennsylvania. Accordingly, this factor is neutral.

### 2. *Public Interest Factors*

As noted above, the public interest factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the congestion of the courts' dockets; (4) the local forum's interest in deciding the case; (5) the public policies of the fora; and (6) the trial judge's familiarity with any applicable state law. See Jumara, 55 F.3d at 879-80. The parties appear to agree that factors one, three, and six are irrelevant, as they have not mentioned them in their respective submissions. Therefore, we will focus solely on factors two, four, and five.

#### a. *Practical Considerations Regarding Efficiency*

The practical considerations that would make trial easy, expeditious, or inexpensive is a neutral factor. As discussed above, it would be more expensive and difficult for Johnson to litigate this matter in the Northern District of Georgia than it would be in the Eastern District of Pennsylvania. However, it would be similarly more expensive for Equifax to litigate in the Eastern District of Pennsylvania, in light of all of its witnesses being located in Atlanta, Georgia.

11

While we found above that the convenience of the parties weighed against transfer, this factor pertains to the *overall* practical considerations of trial. Accordingly, this factor is neutral.

b. *Local Forum's Interest and Public Policy*

"Courts have a local interest in having localized controversies decided at home." Murphy, 2012 WL 3536322, at *6 (citing Bogollagama, 2009 WL 4257910, at *5). Johnson argues that Pennsylvania has a local, public interest in deciding this case because Equifax has repeatedly violated the law in a willful fashion in Pennsylvania. (Pl.'s Br. Opp'n at 14.) In addition, she claims this matter relates specifically to Pennsylvania because Equifax failed to provide the requested information to her, a Pennsylvania resident. (Id.) Equifax argues that Georgia has a strong interest due to: (1) it being incorporated and headquartered in Georgia; (2) its consumer database being located in Georgia; (3) its Consumer Center, which handles consumer disputes, being located in Georgia; (4) its policies and procedures being established and maintained in Georgia; (5) it issuing credit reports to potential creditors from Georgia; (6) and all of its documents and witnesses regarding this dispute being located in Georgia. (Def.'s Mem. in Supp. Mot. to Transfer at 8-9.)

We agree with Equifax that Georgia has more of a local and public policy interest in deciding this case than Pennsylvania. Equifax is a business entity that is established and headquartered in Georgia. All of the information regarding its consumer database, consumer data receiving and transmitting, policies and procedures, and all documents and witnesses pertaining to this dispute are located in Georgia. Based on those facts, and as mentioned above, we find it significant that the situs of the occurrence of the events occurred in Georgia. See Smith, 2010 WL 2270541, at *4. While it is true that Johnson resides in Pennsylvania, we

believe the situs of the occurrence of the events outweighs her residency under these facts. Accordingly, this factor weighs in favor of transfer.

## IV. CONCLUSION

After balancing the private and public interest factors, we believe Equifax has carried its burden to prove that transfer to the Northern District of Georgia is appropriate. While both parties have their forum preference and have witnesses located in their preferred jurisdictions, we find it significant that the situs of Johnson's claims occurred in Atlanta, Georgia. The allegations of wrongdoing on behalf of Equifax center on its policies and procedures relating to credit information it receives and transmits. Therefore, we grant Equifax's Motion to Transfer Venue to the Northern District of Georgia, Atlanta Division.

An appropriate Order follows.